**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| 11333, Inc., f/k/a Investors Mortgage Holdings, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Certain Underwriters at Lloyd's, London, Subscribing to Policy Numbers MBB0756586A08, MBB0856586A09, and B066456586B09; HUB International Insurance Services, Inc.,<br><br>Defendants. | No. CV-14-02001-PHX-NVW<br><br>**ORDER** |

Before the Court is Defendant Certain Underwriters at Lloyd's, London Subscribing to Policy Number MBB0756586A08's Motion for Award of Attorneys' Fees (Doc. 185), 11333 Incorporated's response, Underwriter's reply, 11333 Incorporated's sur-reply, and Underwriters' objection to 11333 Incorporated's sur-reply.

**I.     BACKGROUND**

11333 Incorporated ("11333") is a licensed mortgage broker that arranges and services mortgage loans. In 2003, 11333 was designated as the exclusive manager of IMH Secured Loan Fund, LLC ("the Fund"), a limited liability company that makes commercial and subdivision real estate loans. Until 2010, 11333 was a separate entity from the Fund.

In 2006, the Fund made an $18 million mortgage loan to Avocet Oceanfront Villas ("Avocet"), a subdivision land developer. Avocet used the loan to obtain and develop

146 acres for an oceanfront subdivision in Galveston, Texas. In 2007, Avocet defaulted on its mortgage loan, and its property insurance was canceled for non-payment of premium. In April 2008, the Fund foreclosed and took ownership of the Avocet property.

HUB International Insurance Services, Inc. ("HUB") is an insurance broker. In 2007, HUB procured for 11333 a "Mortgage Bankers/Brokers Errors and Omissions" policy ("the Policy") from Certain Underwriters at Lloyd's, London ("Underwriters"). The Policy named 11333 as the insured; it did not name the Fund as an insured. It had coverage limits of $5 million minus a $25,000 deductible. The Policy remained in effect until June 22, 2009.

In September 2008, Hurricane Ike struck the Texas Gulf Coast and caused damage to the Avocet property, which 11333 discovered by March 2009. By at least March 2009, 11333 also knew that it did not have flood insurance for the physical damage.

In June 2010, the Fund acquired 11333 as a wholly owned subsidiary. In March 2011, the Fund submitted a claim under a Mortgage Bankers/Brokers Errors and Omissions Policy that was effective from 2010 to 2011. The claim was denied, litigated, rejected on summary judgment, and settled on appeal.

In January 2014, 11333 submitted a claim to Underwriters under the 2008-09 Policy. In March 2014, Underwriters denied coverage. On September 10, 2014, 11333 filed this action. It alleged against Underwriters breach of contract by failing to indemnify 11333's losses caused by 11333's negligent failure to procure flood insurance and breach of the duty of good faith and fair dealing by depriving 11333 of the benefit of its bargain with respect to the Policy. It alleged against HUB negligence, professional negligence, breach of contract, and breach of the duty of good faith and fair dealing, arising out of HUB's contract with 11333 to procure mortgage bankers/brokers insurance for 11333.

On June 13, 2017, Underwriters' and HUB's motions for summary judgment were granted, and judgment was granted in their favor on all of 11333's claims. Underwriters seek an award of attorney fees under A.R.S. § 12-341.01(A) in the amount of

1 $1,112,137.50, which is comprised of $124,359.50 The Cavanagh Law Firm billed to Underwriters, which was paid in full by Underwriters, and $987,778.00 Clyde & Co US LLP billed to Underwriters, which also was paid in full by Underwriters.

## II. LEGAL STANDARD UNDER A.R.S. § 12-341.01(A)

A.R.S. § 12-341.01(A) provides: "In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." Under § 12-341.01(A), attorney fees may be awarded based upon facts that show a breach of contract, the breach of which may also constitute a tort. *Sparks v. Republic Nat. Life Ins. Co.*, 132 Ariz. 529, 543, 647 P.2d 1127, 1141 (1982). Intertwining of contract and tort legal theories does not preclude a fee award if the cause of action in tort could not exist but for the breach of contract. *Id.*; *Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.*, 198 Ariz. 10, 13, 6 P.3d 315, 318 (Ct. App. 2000). "[W]hen two claims are so intertwined as to be indistinguishable, a court has discretion to award attorney fees under § 12–341.01 even though the fees attributable to one of the causes of action would not be recoverable under this statute." *Zeagler v. Buckley*, 223 Ariz. 37, 39, 219 P.3d 247, 249 (Ct. App. 2009). "Moreover, when . . . claims are so interrelated that identical or substantially overlapping discovery would occur, there is no sound reason to deny recovery of such legal fees." *Id.*

Although state and federal statutes direct courts to award a successful party certain taxable costs, A.R.S. § 12-341.01 does not permit courts to award non-taxable costs. *Ahwatukee Custom Estates Mgmt. Ass'n, Inc. v. Bach*, 193 Ariz. 401, 404, 973 P.2d 106, 109 (1999). An award of attorney fees under § 12-341.01 may include legal assistant services and the cost of computerized legal research. *Id.* at 403-04, 973 P.2d at 108-09.

An award of fees under § 12-341.01 is discretionary. *Fulton Homes Corp. v. BBP Concrete*, 214 Ariz. 566, 569, 155 P.3d 1090, 1093 (Ct. App. 2007). The statute does not establish a presumption that attorney fees be awarded in contract actions. *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 569, 694 P.2d 1181, 1183 (1985). In determining whether to award attorney fees under § 12-341.01, trial courts may consider the following

non-exclusive factors pertinent to discretion: the merits of the unsuccessful party's case, whether the litigation could have been avoided or settled, whether assessing fees against the unsuccessful party would cause an extreme hardship, the degree of success by the successful party, any chilling effect the award might have on other parties with tenable claims or defenses, the novelty of the legal questions presented, and whether such claim had previously been adjudicated in this jurisdiction. *Id.* at 570, 694 P.2d at 1184.

"The award of reasonable attorney fees pursuant to [§ 12-341.01] should be made to mitigate the burden of the expense of litigation to establish a just claim or a just defense. It need not equal or relate to the attorney fees actually paid or contracted, but the award may not exceed the amount paid or agreed to be paid." A.R.S. § 12-341.01(B). "Once a litigant establishes entitlement to a fee award, the touchstone under § 12-341.01 is the reasonableness of the fees." *Assyia v. State Farm Mut. Auto. Ins. Co.*, 229 Ariz. 216, 222, 273 P.3d 668, 674 (Ct. App. 2012). To determine reasonable attorney fees in commercial litigation, courts begin by determining the actual billing rate that the lawyer charged in the particular matter. *Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 187, 673 P.2d 927, 931 (Ct. App. 1983). If persuaded that the contracted hourly rates are unreasonable, courts may use a lesser rate. *Id.* at 188, 673 P.2d at 931.

Under the Arizona Supreme Court's Rules of Professional Conduct, factors to be considered in determining the reasonableness of an attorney fee include the following:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) the degree of risk assumed by the lawyer.

A.R.S. Sup. Ct. Rules, Rule 42, Rules of Prof. Conduct, ER 1.5. In addition, Local Rules require consideration of whether the fee contracted between the attorney and the client is fixed or contingent, the "undesirability" of the case, and awards in similar actions. LRCiv 54.2(c).

A motion for award of attorney fees must include a task-based itemized statement of fees, which identifies the date on which the service was performed, the time devoted to each individual unrelated task performed on the date, a description of the service provided, and the identity of the person performing the service. LRCiv 54.2(e)(1).

> The party seeking an award of fees must adequately describe the services rendered so that the reasonableness of the charge can be evaluated. In describing such services, however, counsel should be sensitive to matters giving rise to issues associated with attorney-client privilege and attorney work-product doctrine, but must nevertheless furnish an adequate nonprivileged description of the services in question. If the time descriptions are incomplete, or if such descriptions fail to adequately describe the service rendered, the court may reduce the award accordingly.

LRCiv 54.2(e)(2). The Local Rule also says a time entry for a telephone conference must identify all participants and the reason for the telephone call. *Id.* A time entry for legal research must identify the specific legal issue researched and, if appropriate, should identify the pleading or document the preparation of which occasioned the conduct of the research. *Id.* A time entry for preparation of pleadings and other papers must identify the pleading, paper, or other document prepared and the activities associated with its preparation. Ordinarily, air travel time should not be charged. *Id.* If services were performed during air travel, then the fee statement should describe the services performed rather than the travel time. *Id.*

There may be some tension between details of this Local Rule and the substantive Arizona law of A.R.S. § 12-341.01(A). If the Local Rule is taken as excluding what would be compensable under the statute, the Local Rule may go beyond regulation of procedure alone. Except where statute or Arizona case law holds otherwise, the lynchpin of the possible fee award under the statute is the reasonable fee, which means fair market value of services, not to exceed what was paid or agreed to be paid. In quantifying the

fees to be awarded, the Court is mindful to apply the Local Rule in a way that does not exclude what is otherwise a reasonable fee as determined by customary and reasonable billing practices within the insurance and commercial litigation bar.

## III. ANALYSIS

### A. Eligibility

Under A.R.S. § 12-341.01(A), reasonable attorney fees may be awarded to the successful party in any contested action arising out of an express or implied contract. 11333 does not dispute that its action against Underwriters was contested, the action arose out of contract, and Underwriters were successful parties. Underwriters were granted summary judgment on all of 11333's claims. Therefore, Underwriters are eligible for an attorney fee award under § 12-341.01(A).

### B. Entitlement

One discretionary factor favoring an award of attorney fees is that this dispute is between sophisticated commercial parties in the course of their business. They were represented and had the advantage of thorough legal advice, including assessment of the likelihoods of success and of failure. They understand the character and cost of this kind of litigation. There is a certain fairness in letting the cost of doing that business fall on the party who gambled and lost. Of course, there is more to the exercise of discretion than that. Other considerations are discussed below.

In exercising its discretion as to whether to award attorney fees under A.R.S. § 12-341.01(A), the Court considers the merits of the unsuccessful party's case (and the reciprocal of that, the merits of the successful party's case), whether the litigation could have been avoided or settled, whether assessing fees against the unsuccessful party would cause an extreme hardship, the degree of success by the successful party, any chilling effect the award might have on other parties with tenable claims or defenses, the novelty of the legal questions presented, and whether such claim had previously been adjudicated in this jurisdiction. *See Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985). Underwriters were entirely successful.

11333 contends that Underwriters should be denied a fee award because (1) 11333's claims were meritorious, (2) 11333's claims raised issues that had no precedent in Arizona, (3) a fee award would discourage policyholders from bringing tenable claims against insurers, and (4) Underwriters denied attempts to settle this case and rejected multiple reasonable settlement offers. 11333 also contends that a fee award would be a "colossal blow," but offers no evidence that an award would cause an extreme hardship.

<u>Magnitude and character of the litigation.</u> The legal services rendered here were extensive but so was the litigation Underwriting was responding to. 11333 bought a mortgage broker's policy that offered many diverse coverages. One could have been general third-party liability coverage for errors and omissions of 11333. But 11333 consciously chose not to buy that coverage, the language for that coverage was stricken out of the policy, and the declarations page noted that no premium was paid for such coverage. There was much more to this litigation, but at its core, this was 11333's attempt to distort other language for other coverages into the very coverage it chose not to buy. Obviously, general liability coverage would have been much more expensive than the pot pouri of incidental coverages it did pay for. This lawsuit was unmeritorious and unjust at its core.

11333's lawsuit was characterized by pervasive aggressiveness, confusion, exaggeration and misstatement of evidence, law, and policy language, bold and highly burdensome misuse of so-called expert testimony, and a strategy of viscous projectiles adhering to vertical surfaces. 11333 forced Underwriters to clean Augean stables, and they did so with Herculean effort. Underwriters' quantum of legal services, though extensive, was what one would expect in defeating such litigation.

The amount at stake made that quantum of legal services reasonable and a blunt necessity. The risk was said to be in the range of $12,000,000. 11333's last best offer was $3,000,000, made before three-fourths of the defense fees were incurred. Ironically, the defense fees of $1,200,000 at the end were close to what plaintiff's contingent fee would have been early on if Underwriters had accept that last best offer.

<u>11333's claims were not meritorious</u>. 11333 alleged that Underwriters breached its contract by failing to indemnify 11333 for 11333's losses caused by 11333's negligent failure to procure flood insurance. Under the Policy, 11333 was the insured, and the Fund was not named as an additional insured. During the 2008-09 policy period, the Fund and 11333 were separate entities. The Fund, not 11333, obtained ownership of the property through foreclosure. Although 11333 managed the Fund, 11333 did not hold an ownership interest or mortgagee interest in the subject property during the policy period. The Fund suffered the loss caused by 11333's failure to obtain flood insurance, but the Policy did not name the Fund as an insured.

11333 presented weak contentions, ultimately unmeritorious, factually and legally, within well-settled principles of law. 11333 lacked evidence to support its claims within the fabric of established law. There was nothing to 11333's claims against HUB except wishful thinking about what the Policy meant and about what evidence would show but did not show. There was no "merit" to 11333's case that would appeal to discretion to withhold an otherwise warranted fee award.

<u>11333's claims did not raise novel legal issues</u>. To weigh against a fee award for novelty, the ultimately unmeritorious claims need to be serious in the fabric of legal doctrine, supported by evidence, and worthy of presentation for neutral decision. Otherwise, the weaker the claim, the more "novel" it is. That would be a perverse reading of the statute. That kind of "novelty" warrants awarding fees, not deflecting them.

Although the specific coverage here has been infrequently litigated, if ever, and the parties found no cases with similar facts, the relevant legal principles for interpreting and applying insurance policies are well established. 11333's case is grounded in confusion about policy language and stretched evidence or nonevidence. It disregarded ordinary meanings of words and the business purposes of various insurance coverages. The lawsuit had no grounding in actual expectations or negotiations of the insured. It did

not involve novel legal issues in the sense that litigants should be encouraged to burden other people with them. This factor does not weigh against a fee award.

<u>A fee award will not have a chilling effect on tenable claims by policyholders</u>. 11333 contends that the risk of having to pay a large fee award will discourage a policyholder from bringing a claim under a completely untested legal theory or untested policy language. The factor to be considered, however, is whether a policyholder will be deterred from bringing a tenable claim, not from gambling on a legal theory in defiance of language and devoid of evidence. The fact that similar cases have not been litigated indicates both lack of seriousness and unlikelihood that a compensatory fee award here would deter claims deserving of neutral decision.

11333's argument boils down to saying insurance companies should not be awarded fees under the statute. But there is no such categorical exclusion. To be sure, discretion would rarely be satisfied with assessing a consumer with an insurer's attorney fees when there is little more to support such an exercise of discretion. But this is a commercial dispute between sophisticated commercial parties. 11333 was in the rare position of having brought, litigated, and lost a similar claim for the same loss against a different carrier for a later policy year. It was assessed attorney fees for that loss, so it was acutely aware that that might be the price of failure again.

Awarding fees in this case would not have a chilling effect on other parties with claims that fairly merit presentation for neutral decision. While the purpose of the statute is to compensate the defendant for the burden of the cost of a just defense, awarding fees could have a collateral benefit of chilling this kind of meritless and costly litigation.

<u>The litigation could not have been avoided or settled</u>. The parties agree that this action could not be settled or avoided because the opposing party was unreasonable. 11333 has no one to fault but itself that it never made a reasonable settlement offer. But the legitimate focus of this factor is not to penalize a party with a just claim or defense for failing to take less than is owed or pay more than is owed. This factor does not punish litigants for winning. To be sure, if a litigant ends up doing less well than he would have

under a declined settlement offer, that would weigh heavily against a fee award, at least for further fees after rejecting the offer. This factor looks primarily to whether a non-litigation solution was not pursued that could have solved the problem and whether litigation was not necessary. For example, if a plaintiff files an early lawsuit without pre-suit demand and the defendant then acquiesces, the plaintiff should not be awarded any attorney fees. This factor does not weigh against awarding fees in this case.

Upon consideration of the *Associated Indemnity* factors and other discretionary factors, in its discretion the Court will award Underwriters fees under A.R.S. § 12-341.01(A) in the full reasonable amount.

### C. Reasonableness of Fee Request

Underwriters seek an award of attorney fees in the amount of $1,112,137.50 for services provided by Clyde & Co and The Cavanagh Law Firm from July 8, 2014, through May 31, 2017. 11333 contends Underwriters' fee request is unreasonable for the following reasons:

1. The hourly rates billed by the Clyde & Co lawyers are excessive for an insurance matter in the Phoenix market.

2. The legal services provided did not require as many hours as were billed, and many of the services could have been provided by a less senior lawyer with a lower hourly rate.

3. Underwriters' request impermissibly includes $8,575.00 for 24.5 hours spent in air travel.

4. 176 of Underwriters' time entries do not include an adequate description of the services provided, which makes it impossible to assess the reasonableness of the fee billed.

At the threshold, the Court finds that the services and charges as a whole are within the range of reasonableness. This litigation was protracted and detailed with numerous factual assertions, doggedly prosecuted by 11333. The amount at stake may have been $12,000,000 or much more. The fee claim as a whole is within what the Court would expect for this litigation.

Hourly rates. 11333 contends that the hourly rates charged by Clyde & Co are unreasonable for an insurance matter of this character in the Phoenix market. Although one attorney billed 244 hours at $500/hour, the vast majority of the time billed—more than 2,900 hours—was charged at $350/hour or less. The Court rejects 11333's assertion that the hourly rates of Clyde and Co exceed the Phoenix market for lawyers of similar skill and experience. The highest rate of $500 is within the Phoenix market for highly skilled, experienced, and regarded lawyers for complex high-dollar commercial litigation, including insurance litigation of this character. Much "insurance litigation" is routine, high-volume claims handling charged at lower rates. But this was of a different order of magnitude. Judging by their performance observable by the Court, Underwriters' counsel performed at the highest level of quality and accuracy. That shows in comparison to 11333's performance and in the outcome.

To determine reasonable attorney fees in commercial litigation, the analysis begins with the actual billing rate that the lawyer charged (and was paid) in the particular matter. *Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 187, 673 P.2d 927, 931 (Ct. App. 1983). "[I]n corporate and commercial litigation between fee-paying clients, there is no need to determine the reasonable hourly rate prevailing in the community for similar work because the rate charged by the lawyer to the client is the best indication of what is reasonable under the circumstances of the particular case." *Id.* at 187-88, 673 P.2d at 931-32. Here, Underwriters request a fee award based on the actual billing rates that lawyers charged and were paid in this action. The hourly rates are reasonable.

Number of hours. 11333 contends that Underwriters overstaffed this case and should have made more use of less experienced, less expensive attorneys. Clyde & Co charged Underwriters $987,778.00 for 3,176.6 hours of legal services. The Cavanagh Law Firm charged Underwriters $124,359.50 for 592.9 hours of legal services. The total for both firms is $1,112,137.50 for 3,769.5. In comparison, 11333's counsel spent 1,856.7 hours prosecuting the case.

Underwriters explained that they retained two separate firms for representation in this litigation based on their litigation strategy and the expertise required. As principal litigation and coverage counsel, Clyde & Co attorneys took the lead in settlement discussions, formulating and executing coverage positions and litigation strategy, drafting motions, and propounding and responding to discovery. Local counsel took the lead in oral arguments, defending depositions, and taking depositions related to construction and property issues. Coverage counsel took the lead in depositions regarding insurance policy interpretation, claims handling practices, and bad faith. That was a reasonable and sensible division of labor.

11333 contends that Underwriters' statement of fees "reveals clear excesses in the volume of work performed on this case," such as 201.6 hours billed for a motion to exclude an expert. In response, Underwriters explained the tasks involved and the necessity for performing them. Similarly, 11333 contends that 368.2 hours is too much time for a paralegal to summarize deposition transcripts, but Underwriters explained that more than twenty depositions were taken, and many involved lengthy transcripts and numerous exhibits. It is unpersuasive to argue that too many hours were spent conducting research for and drafting a particular motion without any context (*e.g.*, number and complexity of factual and legal issues) by which to assess whether the number of hours is excessive. It is even less persuasive to claim, without citations to the record, that senior partners "performed an enormous amount of legal research, drafting of pleadings, and a number of other tasks that are ordinarily performed by associates, or even paralegals, who bill at a significantly reduced rate." The motion for summary judgment and the motion challenging expert Kochenberger were critically important and were done with utmost skill, thoroughness, and clarity.

The Court has examined each of the categories of challenged amount of work and finds all of them reasonable for the reasons Underwriters state with the exceptions noted below. The relative amount of services is also reasonable. It is not so in all cases, but in this case it was much easier for the Plaintiff to make assertions than for the Defendant to

run every one down as lacking evidence and/or legal basis. But they did. Underwriters' attorneys devoted a very large number of hours to this case. But 11333 has not shown the number is excessive.

<u>Air travel</u>. Affidavits in support of Underwriters' fee motion state that travel times for depositions were deducted from the total amounts requested. Regarding The Cavanagh Law Firm, the deductions are not shown on its invoices, but the amount requested ($124,359.50) reflects a reduction of $16,272.00 billed for travel time from the total amount invoiced ($140,631.50).

Clyde & Co's invoices explicitly show deductions of much of the time billed for travel, but not all. 11333 contends that Underwriters erroneously included in its fee request $8,575.00 for 24.5 hours spent in air travel, but it does not explain how it determined the specific amount that should have been deducted. 11333 objects to nine billing entries in which Clyde & Co mentioned travel in the description of services and did not deduct travel time, but the total of the nine entries exceeds $8,575.00.

11333 objects that this time is excluded from compensation by Local Rule LRCiv 54.2(e)(2)(D), which states, "Travel time: Ordinarily air travel time should not be charged. If services were performed during such time, then describe such services rather than charging for the travel time." 11333 does not object that any of the travel itemized in Clyde and Co.s billings was unreasonable or unnecessary.

"[R]easonable attorney fees" may be awarded under A.R.S. § 12-341.01(A). The only limitation is that the amount awarded "may not exceed the amount paid or agreed to be paid." A.R.S. § 12-341.01(B). That statute is part of the substantive contract law of Arizona. *See CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1111 (9th Cir. 2007) (states' fee-shifting statutes constitute substantive law when they authorize fee awards to litigants in a particular class of cases). What is a reasonable fee is a matter of the market and the customary reasonable practices of attorneys. The fact is that commercial attorneys, including insurance attorneys, working on an hourly rate basis routinely and customarily charge their clients for their time necessarily traveling on the

client matter, whether or not other legal work is done on the airplane. Some legal work can be done in that setting but most cannot. Careful attorneys will be fully prepared for the work at the destination before they leave home. Clients universally pay for that time. It is proper for attorneys to so charge; the travel time deprives them of the opportunity to work for other paying clients during that time.

The statutory authority for the Local Rules is 28 U.S.C. § 2071, which provides in part:

> (a) The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed under section 2072 of this title.
> . . .
> (f) No rule may be prescribed by a district court other than under this section.

The statute does not authorize rules changing the substantive law to be applied in district courts. Local rules must be procedural. By excluding reasonable travel time from attorney fee compensation under A.R.S. § 12-341.01(A), Local Rule LRCiv 54.2(e)(2)(D) exceeds the statutory authorization of "rules for the conduct of their business." Therefore, the Local Rule cannot validly exclude such services from the reasonable attorney fees that can be awarded under A.R.S. § 12-341.01(A). 11333's objections to attorney air travel time are overruled.

Because Underwriters' counsel largely adhered to the Local Rule 54.2(e)(2)(D), which is invalid, they have not had an opportunity to claim the full extent of their reasonable fees for air travel time and to show that the travel was reasonable. They will be allowed to do so by supplemental application.

<u>Description of services</u>. Under LRCiv 54.2(e)(2), "If the time descriptions are incomplete, or if such descriptions fail to adequately describe the service rendered, the court may reduce the award accordingly." 11333 contends that many of the billing entries included in Underwriters' fee motion provide inadequate description of the legal services provided and/or do not show the time spent for each service included in a single entry.

11333 has presented the Court with 53 pages of objections to specific time entries. Most of the objections are groundless, and obviously so. For example, 11333 contends that the following entry constitutes "improper block billing": "Detailed analysis, research, and formulation of notice-prejudice argument for use in expert depositions and on summary judgment." But analysis, research, and formulation of an argument are interrelated such that apportioning time among the three functions would be arbitrary. Similarly, 11333 contends that the following entry for 0.7 of an hour is too vague: "Further development and exploration of notice-prejudice argument." In addition, 11333 objects to every description that includes the words "prepare" or "preparation" as failing to identify the activity performed. The time entries said to be block billing are adequate to judge the reasonableness of the services and the charges.

11333 objects to time entries that were partially redacted for confidentiality. The Court has examined them *in camera*. The redactions by Clyde & Co are few in number, the services are adequately presented to determine their reasonableness, and all of the services are reasonable. All of 11333's objections to Clyde & Co's redacted time entries are overruled.

Having reviewed *in camera* the redacted time entries by The Cavannagh Law Firm, the Court concludes that none of the redactions was necessary to protect privileged communications or attorney work product, and the redactions prevented assessing the reasonableness of the work performed. All of 11333's objections to The Cavannagh Law Firm's redacted time entries, which total $9,271.00, are sustained. Therefore, $9,271.00 will be deducted from Underwriters' fee request.

Errors. 11333 identified 12 billing entries that do not appear to relate to this case, totaling $2,010.00. Additional mistakes include duplicate entries on April 26, 2016 ($888.00) and November 17, 2014 ($957.00). Those entries are erroneous. Therefore, $3,855.00 will be deducted from Underwriters' fee request.

In summary, from Underwriters' request for an attorney fee award in the amount of $1,112,137.50, $9,271.00 will be deducted for inadequate description of services because of unnecessary redactions, and $3,855.00 will be deducted for billing errors.

**D.     Exercise of Discretion**

A.R.S. § 12-341.01 authorizes the discretionary award of attorney fees "to mitigate the burden of the expense of litigation to establish a just claim or a just defense," which "need not equal or relate to the attorney fees actually paid or contracted." A.R.S. § 12-341.01(B). For the reasons stated above, in the Court's discretion it will award Underwriters their full reasonable attorney fees in the amount of $1,099,011.50. In this Court's discretion, failure to do so would work an injustice in the circumstances of this case.

**E.     Underwriters' Objection to 11333's Sur-Reply (Doc. 205)**

Because Underwriters included new evidence in their reply brief, 11333 was permitted to file a sur-reply. 11333 then filed a sur-reply that exceeded the permission granted and argued other matters. Underwriters then filed an objection to 11333's sur-reply. The new evidence and the sur-reply are largely irrelevant and are unpersuasive in any event. The objection is sustained; it is also harmless as the sur-reply is not persuasive.

IT IS THEREFORE ORDERED that Defendant Certain Underwriters at Lloyd's, London Subscribing to Policy Number MBB0756586A08's Motion for Award of Attorneys' Fees (Doc. 185) is granted in the amount of $1,099,011.50 so far.

IT IS FURTHER ORDERED that Defendant Certain Underwriters at Lloyd's, London Objection to Plaintiff's Sur-Reply to Defendant's Motion for Attorney Fee Award (Doc. 205) is granted but moot.

IT IS FURTHER ORDERED that Underwriters may submit a supplemental request for attorney fees that includes the omitted attorney air travel time and any additional services incurred on this motion. A supplemental request may be filed by

April 13, 2018; a response may be filed by April 27, 2018; a reply may be filed by May 4, 2018.

Dated this 30th day of March, 2018.

_____
Neil V. Wake
Senior United States District Judge