**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| 11333, Inc., f/k/a Investors Mortgage Holdings, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Certain Underwriters at Lloyd's, London, Subscribing to Policy Numbers MBB0756586A08, MBB0856586A09, and B066456586B09; HUB International Insurance Services, Inc.,<br><br>Defendants. | No. CV-14-02001-PHX-NVW<br><br>**ORDER** |

Before the Court is HUB International Insurance Services, Inc.'s Motion for Award of Attorneys' Fees and Related Non-Taxable Expenses (Doc. 183).

**I.  BACKGROUND**

11333 Incorporated ("11333") is a licensed mortgage broker that arranges and services mortgage loans. In 2003, 11333 was designated as the exclusive manager of IMH Secured Loan Fund, LLC ("the Fund"), a limited liability company that makes commercial and subdivision real estate loans. Until 2010, 11333 was a separate entity from the Fund.

In 2006, the Fund made an $18 million mortgage loan to Avocet Oceanfront Villas ("Avocet"), a subdivision land developer. Avocet used the loan to obtain and develop 146 acres for an oceanfront subdivision in Galveston, Texas. In 2007, Avocet defaulted

on its mortgage loan, and its property insurance was canceled for non-payment of premium. In April 2008, the Fund foreclosed and took ownership of the Avocet property.

HUB International Insurance Services, Inc. ("HUB") is an insurance broker. In 2007, HUB procured for 11333 a "Mortgage Bankers/Brokers Errors and Omissions" policy ("the Policy") from Certain Underwriters at Lloyd's, London ("Underwriters"). The Policy named 11333 as the insured; it did not name the Fund as an insured. It had coverage limits of $5 million minus a $25,000 deductible. The Policy remained in effect until June 22, 2009.

In September 2008, Hurricane Ike struck the Texas Gulf Coast and caused damage to the Avocet property, which 11333 discovered by March 2009. By at least March 2009, 11333 also knew that it did not have flood insurance for the physical damage.

In June 2010, the Fund acquired 11333 as a wholly owned subsidiary. In March 2011, the Fund submitted a claim under a Mortgage Bankers/Brokers Errors and Omissions Policy that was effective from 2010 to 2011. The claim was denied, litigated, and settled on appeal.

In January 2014, 11333 submitted a claim to Underwriters under the 2008-09 Policy. In March 2014, Underwriters denied coverage. On September 10, 2014, 11333 filed this action. It alleged against Underwriters breach of contract by failing to indemnify losses caused by 11333's negligent failure to procure flood insurance and breach of the duty of good faith and fair dealing by depriving 11333 of the benefit of its bargain with respect to the Policy. It alleged against HUB negligence, professional negligence, breach of contract, and breach of the duty of good faith and fair dealing, arising out of HUB's contract with 11333 to procure mortgage bankers/brokers insurance for 11333.

On June 13, 2017, Underwriters' and HUB's motions for summary judgment were granted, and judgment was granted in their favor on all of 11333's claims. HUB seeks an award of attorney fees under A.R.S. § 12-341.01(A) in the amount of $102,483.50 and, in addition, $24,000.98 for related non-taxable costs.

## II. LEGAL STANDARD UNDER A.R.S. § 12-341.01(A)

A.R.S. § 12-341.01(A) provides: "In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." Under § 12-341.01(A), attorney fees may be awarded based upon facts that show a breach of contract, the breach of which may also constitute a tort. *Sparks v. Republic Nat. Life Ins. Co.*, 132 Ariz. 529, 543, 647 P.2d 1127, 1141 (1982). Intertwining of contract and tort legal theories does not preclude a fee award if the cause of action in tort could not exist but for the breach of contract. *Id.*; *Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.*, 198 Ariz. 10, 13, 6 P.3d 315, 318 (Ct. App. 2000). "[W]hen two claims are so intertwined as to be indistinguishable, a court has discretion to award attorney fees under § 12–341.01 even though the fees attributable to one of the causes of action would not be recoverable under this statute." *Zeagler v. Buckley*, 223 Ariz. 37, 39, 219 P.3d 247, 249 (Ct. App. 2009). "Moreover, when . . . claims are so interrelated that identical or substantially overlapping discovery would occur, there is no sound reason to deny recovery of such legal fees." *Id.*

Although state and federal statutes direct courts to award a successful party certain taxable costs, A.R.S. § 12-341.01 does not permit courts to award non-taxable costs. *Ahwatukee Custom Estates Mgmt. Ass'n, Inc. v. Bach*, 193 Ariz. 401, 404, 973 P.2d 106, 109 (1999). An award of attorney fees under § 12-341.01 may include legal assistant services and the cost of computerized legal research. *Id.* at 403-04, 973 P.2d at 108-09.

An award of fees under § 12-341.01 is discretionary. *Fulton Homes Corp. v. BBP Concrete*, 214 Ariz. 566, 569, 155 P.3d 1090, 1093 (Ct. App. 2007). The statute does not establish a presumption that attorney fees be awarded in contract actions. *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 569, 694 P.2d 1181, 1183 (1985). In determining whether to award attorney fees under § 12-341.01, trial courts may consider the following non-exclusive factors pertinent to discretion: the merits of the unsuccessful party's case, whether the litigation could have been avoided or settled, whether assessing fees against the unsuccessful party would cause an extreme hardship, the degree of success by the

successful party, any chilling effect the award might have on other parties with tenable claims or defenses, the novelty of the legal questions presented, and whether such claim had previously been adjudicated in this jurisdiction. *Id.* at 570, 694 P.2d at 1184.

"The award of reasonable attorney fees pursuant to [§ 12-341.01] should be made to mitigate the burden of the expense of litigation to establish a just claim or a just defense. It need not equal or relate to the attorney fees actually paid or contracted, but the award may not exceed the amount paid or agreed to be paid." A.R.S. § 12-341.01(B). "Once a litigant establishes entitlement to a fee award, the touchstone under § 12-341.01 is the reasonableness of the fees." *Assyia v. State Farm Mut. Auto. Ins. Co.*, 229 Ariz. 216, 222, 273 P.3d 668, 674 (Ct. App. 2012). To determine reasonable attorney fees in commercial litigation, courts begin by determining the actual billing rate that the lawyer charged in the particular matter. *Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 187, 673 P.2d 927, 931 (Ct. App. 1983). If persuaded that the contracted hourly rates are unreasonable, courts may use a lesser rate. *Id.* at 188, 673 P.2d at 931.

Under the Arizona Supreme Court's Rules of Professional Conduct, factors to be considered in determining the reasonableness of an attorney fee include the following:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) the degree of risk assumed by the lawyer.

A.R.S. Sup. Ct. Rules, Rule 42, Rules of Prof. Conduct, ER 1.5. In addition, Local Rules require consideration of whether the fee contracted between the attorney and the client is

fixed or contingent, the "undesirability" of the case, and awards in similar actions. LRCiv 54.2(c).

A motion for award of attorney fees must include a task-based itemized statement of fees, which identifies the date on which the service was performed, the time devoted to each individual unrelated task performed on the date, a description of the service provided, and the identity of the person performing the service. LRCiv 54.2(e)(1).

> The party seeking an award of fees must adequately describe the services rendered so that the reasonableness of the charge can be evaluated. In describing such services, however, counsel should be sensitive to matters giving rise to issues associated with attorney-client privilege and attorney work-product doctrine, but must nevertheless furnish an adequate nonprivileged description of the services in question. If the time descriptions are incomplete, or if such descriptions fail to adequately describe the service rendered, the court may reduce the award accordingly.

LRCiv 54.2(e)(2). The Local Rule also says a time entry for a telephone conference must identify all participants and the reason for the telephone call. *Id.* A time entry for legal research must identify the specific legal issue researched and, if appropriate, should identify the pleading or document the preparation of which occasioned the conduct of the research. *Id.* A time entry for preparation of pleadings and other papers must identify the pleading, paper, or other document prepared and the activities associated with its preparation. Ordinarily, air travel time should not be charged. *Id.* If services were performed during air travel, then the fee statement should describe the services performed rather than the travel time. *Id.*

There may be some tension between details of this Local Rule and the substantive Arizona law of A.R.S. § 12-341.01(A). If the Local Rule is taken as excluding what would be compensable under the statute, the Local Rule may go beyond regulation of procedure alone. Except where statute or Arizona case law holds otherwise, the lynchpin of the possible fee award under the statute is the reasonable fee, which means fair market value of services, not to exceed what was paid or agreed to be paid. In quantifying the fees to be awarded, the Court is mindful to apply the Local Rule in a way that does not

exclude what is otherwise a reasonable fee as determined by customary and reasonable billing practices within the insurance and commercial litigation bar.

## III. ANALYSIS

### A. Eligibility

Under A.R.S. § 12-341.01(A), reasonable attorney fees may be awarded to the successful party in any contested action arising out of an express or implied contract. 11333 does not dispute that its action against HUB was contested, the action arose out of contract, and HUB was a successful party. HUB was granted summary judgment on all of 11333's claims, including breach of an oral contract and torts based on duties imposed by the alleged oral contract. Therefore, HUB is eligible for an attorney fee award under § 12-341.01(A).

11333 contends that HUB may not recover any fees attributable to the tort claims because HUB's duties of reasonable care to 11333 were imposed by law and existed regardless of a contract. 11333 alleged that HUB entered into a contract with 11333 wherein HUB agreed to procure certain insurance and HUB breached the contract by failing to procure a policy that suited 11333's operations. 11333's tort claims allege HUB owed 11333 a duty to procure insurance policies suited to 11333's operations—a duty that could have arisen only because HUB allegedly promised to do so in an oral contract. Thus, 11333's contract and tort claims are "so intertwined as to be indistinguishable." *See Zeagler*, 223 Ariz. at 39, 219 P.3d at 249. HUB may be awarded fees attributable to all of 11333's claims because those fees cannot be subdivided between contract and tort theories of law. Moreover, most of the discovery, perhaps all of the discovery, was on the facts in general and was incapable of segmentation into contract and non-contract legal theories. For that reason also, the services in general are compensable.

In addition to attorney fees, HUB seeks an award of related non-taxable costs of $24,000.98, which is not authorized under A.R.S. § 12-341.01(A). *Ahwatukee Custom Estates Mgmt. Ass'n, Inc. v. Bach*, 193 Ariz. 401, 404, 973 P.2d 106, 109 (1999). HUB

relies on A.R.S. §§ 12-332 and 12-341 regarding *taxable* costs to support its request, but does not identify any applicable statute or contract that allows shifting HUB's *non-taxable* costs to 11333. Work performed by a paralegal or legal assistant may be included in attorney fees if the work requires legal training and knowledge and would otherwise be performed by a lawyer. *Id.* Clerical work performed by a paralegal or legal assistant is not compensable, and therefore outsourced clerical work also is not compensable. HUB's request for award of non-taxable costs will be denied.

**B.     Entitlement**

One discretionary factor favoring an award of attorney fees is that this dispute is between sophisticated commercial parties in the course of their business. They were represented and had the advantage of thorough legal advice, including assessment of the likelihoods of success and of failure. They understand the character and cost of this kind of litigation. There is a certain fairness in letting the cost of doing that business fall on the party who gambled and lost. Of course, there is more to the exercise of discretion than that. Other considerations are discussed below.

In exercising its discretion as to whether to award attorney fees under A.R.S. § 12-341.01(A), the Court considers the merits of the unsuccessful party's case (and the reciprocal of that, the merits of the successful party's case), whether the litigation could have been avoided or settled, whether assessing fees against the unsuccessful party would cause an extreme hardship, the degree of success by the successful party, any chilling effect the award might have on other parties with tenable claims or defenses, the novelty of the legal questions presented, and whether such claim had previously been adjudicated in this jurisdiction. *See Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985). 11333 submitted no evidence that a fee award would cause an extreme hardship.

11333 contends that its claims were meritorious merely because it relied on relevant case law and cited to the record to support its arguments. More than citing cases and insufficient evidence is needed for an unsuccessful plaintiff to deflect a fee award

under the statute. 11333's breach of contract claim against HUB alleged the parties had an oral agreement that HUB would procure insurance that would cover 11333's negligent errors and omissions, HUB failed to procure a policy that suited 11333's operations, and HUB provided inaccurate information about the existence of coverage under the policy it placed. On summary judgment, 11333 offered no evidence of an oral contract requiring HUB to do more than what it did, *i.e.*, procure the Policy. 11333 also offered no evidence that HUB represented to 11333 that the Policy covered 11333's failure to cause the Fund to procure flood insurance for the Avocet property. 11333 did not offer evidence that it, rather than the Fund, had sustained damages compensable under the Policy or that it would have been possible for HUB to procure any mortgage bankers/brokers insurance that would have compensated 11333 for the Fund's loss. 11333's tort claims were also time-barred.

11333's claims were not meritorious and did not raise novel legal issues. To weigh against a fee award for novelty, the ultimately unmeritorious claims need to be serious in the fabric of legal doctrine, supported by evidence, and worthy of presentation for neutral decision. Otherwise the weaker the claim, the more "novel" it is. That would be a perverse reading of the statute. That kind of "novelty" warrants awarding fees, not deflecting them.

11333 presented weak contentions, ultimately unmeritorious, factually and legally, within well-settled principles of law. 11333 lacked evidence to support its claims within the fabric of established law. There was nothing to 11333's claims against HUB except wishful thinking about what the Policy meant and about what evidence would show but did not show. There was no "merit" to 11333's case that would appeal to discretion to withhold an otherwise warranted fee award. Awarding fees in this case would not have a chilling effect on other parties with claims that fairly merit presentation for neutral decision. While the purpose of the statute is to compensate the defendant for the burden of the cost of a just defense, awarding fees could have a collateral benefit of chilling this kind of meritless and costly litigation.

11333 further contends that HUB made no attempt to settle this case. In fact HUB attended a June 23, 2015 mediation conference in a related Ninth Circuit appeal to which HUB was not a party but was invited by the parties. HUB responds that 11333's counsel made unreasonable demands and refused to negotiate. But the legitimate focus of this factor is not to penalize a party with a just claim or defense for failing to take less than is owed or pay more than is owed. This factor does not punish litigants for winning. To be sure, if a litigant ends up doing less well than he would have under a declined settlement offer, that would weigh heavily against a fee award, at least for further fees after rejecting the offer. This factor looks primarily to whether a non-litigation solution was not pursued that could have solved the problem and whether litigation was not necessary. For example, if a plaintiff files an early lawsuit without pre-suit demand and the defendant then acquiesces, the plaintiff should not be awarded any attorney fees. This factor does not weigh against awarding fees in this case.

Upon consideration of the *Associated Indemnity* factors and other relevant discretionary factors, the Court finds in its discretion that HUB should be awarded fees under A.R.S. § 12-341.01(A).

### C. Reasonableness of Fee Request

HUB seeks an award of attorney fees in the amount of $102,483.50 for services provided by the Hassett Law Firm P.L.C. from September 17, 2014, through April 24, 2017. 11333 does not object to HUB's hourly rates, but does object to the following:

- $15,081.00 in fees attributable to time spent in air travel;
- $4,167.00 for excessive amounts of time for certain tasks; and
- $24,451.50 in fees for inadequately described services.

At the threshold, the Court finds that the services and charges as a whole are well within the range of reasonableness. This litigation was protracted and detailed with numerous factual assertions, doggedly prosecuted by 11333. The amount at stake may have been $12,000,000 or much more. HUB's counsel's hourly rates were eminently

reasonable. The fee claim as a whole is well within what the Court would expect for this litigation.

Inadequately described services. "If the time descriptions are incomplete, or if such descriptions fail to adequately describe the service rendered, the court may reduce the award accordingly." LRCiv 54.2(e)(2). 11333 objects to 245 of HUB's billing entries (representing $24,451.50 of HUB's fee request) for failing to adequately describe the service rendered, contending that it was impossible to evaluate the reasonableness of the requested fee for these entries.

Some of 11333's objections are nothing more than quibbles on words. For example, 11333 objected every time HUB used the verb "prepare" instead of "draft" regarding a written document because it "Failed to identify activity performed with respect to preparation of . . . ." That description is more than adequate, as is the word "analyze." For example, on April 7, 2015, attorney Moen billed 1.0 hour for "Prepare for oral argument on Lloyd's motion to dismiss—_____." On April 8, 2015, attorney Moen billed 0.9 hours for "Study _____ in motion to dismiss briefs, prepare for oral argument." 11333 objected to both time entries because the descriptions were vague regarding the activity performed in preparation for the oral argument. Further explanation is not required to judge that the tasks performed are reasonable.

11333 objects to essentially all time entries that were redacted. For example, on November 6, 2014, attorney Hassett billed 0.5 hours for "Analyze _____." On December 29, 2014, attorney Moen billed 0.3 hours for "Review _____." On September 29, 2015, attorney Moen billed 0.3 hours for "Research _____." 11333 also objects that many entries refer to a conference, email exchange, or correspondence with a person identified by name, but provide no explanation of the person's role or relevance, and the purpose or general subject of the communication has been redacted. Having reviewed *in camera* the redacted time entries, the Court concludes that none of the redactions was necessary to protect privileged communications or attorney work

product, and in most instances the redactions prevented assessing the reasonableness of the work performed.

The Court has reviewed all 245 objections for inadequacy of description with the benefit of the Court's *in camera* review of redacted entries, examining both the explicit language used and the context. All 11333's objections for inadequacy of description are sustained except for the following, which are overruled and total $12,351.50: October 6, 2014 ($526.50); May 28, 2015 ($48.00, $368.00); February 17, 2016 ($256.00); February 18, 2016 ($304.00); March 15, 2016 ($80.00); March 29, 2016 ($160.00); March 30, 2016 ($304.00, $240.00, $320.00); March 31, 2016 ($112.00); April 5, 2016 ($32.00); April 8, 2016 ($96.00); April 15, 2016 ($224.00); April 17, 2016 ($80.00); April 18, 2016 ($128.00, $240.00); April 19, 2016 ($144.00, $32.00); April 20, 2016 ($128.00, $112.00); April 22, 2016 ($64.00); May 5, 2016 ($160.00); May 25, 2016 ($64.00); July 28, 2016 ($48.00); September 5, 2016 ($80.00); September 6, 2016 ($32.00); September 7, 2016 ($144.00); September 16, 2016 ($128.00); September 20, 2016 ($192.00); September 21, 2016 ($96.00, $96.00); September 23, 2016 ($97.50, $877.50); September 24, 2016 ($292.50, $487.50, $292.50); October 6, 2016 ($128.00); October 19, 2016 ($96.00); October 28, 2016 ($507.00); November 1, 2016 ($331.50); November 21, 2016 ($112.00); November 29, 2016 ($240.00); December 1, 2016 ($192.00); December 8, 2016 ($256.00); December 12, 2016 ($32.00); December 12, 2016 ($32.00); January 3, 2017 ($240.00); January 13, 2017 ($351.00); January 17, 2017 ($682.50); January 31, 2017 ($702.00); February 2, 2017 ($351.00); March 17, 2017 ($64.00); March 22, 2017 ($156.00); March 23, 2017 ($45.00, $36.00, $9.00); June 19, 2017 ($351.00); and June 20, 2017 ($351.50).

Therefore, HUB's fee award will be reduced by $12,100.00.

<u>Air travel</u>. HUB claims $15,081.00 for time spent in air travel by attorneys. 11333 objects that this time is excluded from compensation by Local Rule LRCiv 54.2(e)(2)(D), which states, "Travel time: Ordinarily air travel time should not be charged. If services were performed during such time, then describe such services rather

than charging for the travel time." 11333 does not object that any of the travel was unreasonable or unnecessary.

"[R]easonable attorney fees" may be awarded under A.R.S. § 12-341.01(A). The only limitation is that the amount awarded "may not exceed the amount paid or agreed to be paid." A.R.S. § 12-341.01(B). That statute is part of the substantive contract law of Arizona. *See CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1111 (9th Cir. 2007) (states' fee-shifting statutes constitute substantive law when they authorize fee awards to litigants in a particular class of cases). What is a reasonable fee is a matter of the market and the customary reasonable practices of attorneys. The fact is that commercial attorneys working on an hourly rate basis routinely and customarily charge their clients for their time necessarily traveling on the client matter, whether or not other legal work is done on the airplane. Some legal work can be done in that setting but most cannot. Careful attorneys will be fully prepared for the work at the destination before they leave home. Clients universally pay for that time. It is proper for attorneys to so charge; the travel time deprives them of the opportunity to work for other paying clients during that time.

The statutory authority for the Local Rules is 28 U.S.C. § 2071, which provides in part:

> (a) The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed under section 2072 of this title.
> . . .
> (f) No rule may be prescribed by a district court other than under this section.

The statute does not authorize rules changing the substantive law to be applied in district courts. Local rules must be procedural. By excluding reasonable travel time from attorney fee compensation under A.R.S. § 12-341.01(A), Local Rule LRCiv 54.2(e)(2)(D) exceeds the statutory authorization of "rules for the conduct of their business." Therefore, the Local Rule cannot validly exclude such services from the

reasonable attorney fees that can be awarded under A.R.S. § 12-341.01(A). 11333's objections to attorney air travel time are overruled.

Excessive time. Some of 11333's objections for "extra hours for certain tasks" (Doc. 192 at 8) are misplaced. Lawyers working on multiple tasks on the same case on the same day must estimate the breakdown for each task, and they will not always match the estimates of other lawyers, especially opposing lawyers. The four objections of that character are both overruled and insignificant. Time billing software usually does not allow recording in smaller increments than 0.1 hour. Itemizing tasks in that amount or even 0.2 hour is the norm in commercial hourly rate practice, and it is reasonable. The reality is that ethical lawyers are careful not to bill in any one day more than the total time expended on the services, though the itemization may be approximate as among tasks.

Upon consideration of 11333's objections and HUB's explanations and concessions, objections to the following erroneous/duplicative time entries are sustained, and $656.00 will be deducted from HUB's fee request:

- April 8, 2015 ($16.00): Attorney Moen billed twice for reviewing the same minute entry.
- December 30, 2015 ($16.00): Attorney Moen billed 0.1 hours on December 23, 2015, for reviewing a subpoena to Thompson Heath and Bond, 0.1 hours on December 30, 2015, for reviewing plaintiff's notice of issuance of subpoena to Thompson Heath and Bond, and 0.1 hours on December 30, 2015, for reviewing plaintiff's subpoena to Thompson Heath and Bond. At least one of the entries is duplicative.
- March 21, 2016 ($16.00): Attorney Moen billed 0.1 hours on March 16, 2016, and March 21, 2016, for review of the notice of deposition of Bill Lutz.
- March 31, 2016 ($32.00): On March 28, 2016, attorney Moen billed 0.1 hours to review Boyd's motion for pro hac vice admission and 0.1 hours to

review the order granting Boyd's pro hac vice admission. On March 31, 2016, attorney Moen billed 0.1 hours to review Boyd's motion for pro hac vice admission and 0.1 hours to review the order granting Boyd's pro hac vice admission.

- May 13, 2016 ($16.00): On May 9, 2016, attorney Moen billed 0.1 hours to review plaintiff's notice of service of responses to Lloyd's requests for admission. On May 13, 2016, attorney Moen billed 0.1 hours to review plaintiff's notice of service of responses to Lloyd's requests for admission.

- September 20, 2016 ($480.00): Attorney Glasser mistakenly billed 6.8 hours instead of 3.8 hours to attend a deposition.

- November 29, 2016 ($32.00): On November 21, 2016, attorney Glasser billed 0.2 hours to review plaintiff's response to motion to exclude testimony of Nigel Hughes. On November 29, 2016, attorney Glasser billed 0.2 hours to review plaintiff's response to motion to exclude testimony of Nigel Hughes.

- December 27, 2016 ($48.00): On December 15, 2016, attorney Glasser billed 0.3 hours for reviewing plaintiff's revised motion for summary judgment and statement of facts. On December 27, 2016, attorney Glasser billed 0.2 hours for reviewing plaintiff's revised motion for summary judgment and 0.3 hours for reviewing plaintiff's revised statement of facts. Attorney Glasser billed for preparing a response to plaintiff's motion and statement of facts on subsequent days.

11333's remaining objections based on the amount of time billed are overruled.

Therefore, HUB's fee request will be reduced in the amount of $656.00 for billing errors. In the Court's discretion and in all the circumstances of this case the Court will award HUB attorney fees in the amount of $89,727.50. The Court finds this amount to be reasonable.

IT IS THEREFORE ORDERED that HUB International Insurance Services, Inc.'s Motion for Award of Attorneys' Fees and Related Non-Taxable Expenses (Doc. 183) is granted in the amount of $89,727.50.

IT IS FURTHER ORDERED that HUB International Insurance Services, Inc.'s request for award of non-taxable costs is denied.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendant HUB International Insurance Services, Inc., against Plaintiff 11333, Inc., in the amount of $89,727.50 for attorney fees, plus post-judgment interest thereon sat the federal rate of 2.06% from the date of this judgment until paid.

Dated this 30th day of March, 2018.

_____
Neil V. Wake
Senior United States District Judge